IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:15-CR-151-O |
| JERRY CURRY (08) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

The government is opposed to defendant Jerry Curry's motion to withdraw his guilty plea.

Background and Procedural History

Jerry Curry was first identified by law enforcement as a methamphetamine distributor in 2009. (PSR ¶ 60.) By pure happenstance, Curry was not prosecuted then, but was recently identified again as being involved in a methamphetamine conspiracy flowing from his criminal associations in 2009, which is the basis of his current indictment. In both investigations, Curry gave incriminating statements to law enforcement. (PSR ¶¶ 21-23, 26, 29, 60-61.) And where there were gaps in Curry's statements, other co-conspirators filled in the details. (PSR ¶¶ 24-25, 30-37.) On June 10, 2015, a one-count indictment was returned against Jerry Curry and others alleging conspiracy to possess with intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846. Curry was taken into federal custody on June 15, 2015.

He appeared before Magistrate Judge Jeffrey L. Cureton the following day and was detained pending further proceedings.

On July 22, 2015, Curry pled guilty to the indictment before Magistrate Judge Jeffrey L. Cureton.   Curry was given the standard admonishments during the plea colloquy with the Magistrate Judge.[1]   After the Magistrate Judge's warnings, Curry pled guilty.   His guilty plea was supported by a factual resume wherein Curry admitted to the following:

> Since approximately 2014, Amanda Means, Jerry Curry, Brian Harris, and ~~Joel Prickett~~ received ounce and multi-ounce quantities of methamphetamine on consignment from Matthew Rutledge.   In turn, Amanda Means, Jerry Curry, Brian Harris, and ~~Joel Prickett~~ distributed methamphetamine to various customers in the Fort Worth, Texas area, returning to Matthew Rutledge for additional methamphetamine.   In this manner, Matthew Rutledge, Amanda Means, Jerry Curry, Brian Harris, and ~~Joel Prickett~~ conspired with each other and others to possess with intent to distribute more than 50 grams of methamphetamine.

The factual resume, signed and dated by Curry and his attorney, contained hand-drawn interlineations that struck "Joel Prickett" from the stipulated facts of the factual resume. (*See* Factual Resume, doc. 164.)   This, of course, meant that Curry did not want to admit to being involved with Joel Prickett and evinces that he read and understood the facts he was admitting to.   On that same day, the Magistrate Judge filed a report and recommendation to the Court.   (Doc. 199.)   The report made the following findings:

1. The defendant, upon advice of counsel, has consented orally and in writing to enter this guilty plea before a magistrate judge subject to final approval and sentencing by the presiding district judge

---

[1] The government has ordered a transcript of the hearing.

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page 2**

2. The defendant fully understands the nature of the charges and penalties;
3. The defendant understands all constitutional and statutory rights and wishes to waive these rights, including the right to a trial by jury and the right to appear before a United States district judge;
4. The defendant's plea is made freely and voluntarily;
5. The defendant is competent to enter this plea of guilty;
6. There is a factual basis for this plea; and
7. The ends of justice are served by acceptance of the defendant's plea of guilty.

The report also advised the defendant that he had fourteen days to make objections to these findings.  *Id.*  On August 10, 2015, the Court accepted the Magistrate Judge's report and recommendations.

On August 31, 2015, the Court held a status conference in the case.[2]  At that hearing, the defendant expressed some dissatisfaction with his attorney, but when pressed by the Court on the issue it became clear that the defendant was dissatisfied with the information his attorney was giving him; that is, the defendant was dissatisfied with the situation he was in and upset about not knowing what his sentence was going to be. However, the defendant did not claim that he was innocent or state that he wanted to withdraw his guilty plea.  On September 1, 2015, Curry was interviewed, in the presence of his attorney, by a U.S. Probation Officer.  (PSR ¶ 45.)  Curry admitted he was guilty of the charged offense and acknowledged the facts contained in the factual resume were true.  *Id.*  He also admitted that he became involved in the offense after he stopped working due to his medical condition.  *Id.*  He elected not to discuss "relevant conduct".  *Id.*

---

2 The government has ordered a transcript of the hearing.

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page 3**

On September 10, 2015, approximately seven weeks after his guilty plea, a presentence report ("PSR") was submitted recommending a Guideline imprisonment range of 235-293 months (Total Offense Level 33/Criminal History Category VI).   (PSR ¶ 88.)   On September 24, 2015, Curry filed objections to the PSR, and a motion to withdraw his guilty plea.   In his motion, Curry alleges that he was rushed into signing the factual resume in his case, that his guilty plea was not a knowing and voluntary plea, and that he is innocent.

Legal Standard for Withdrawal of Guilty Plea

A district court may grant a motion to withdraw a guilty plea before a defendant is sentenced if the defendant shows a "fair and just reason."   FED.R.CRIM.P. 11(d)(2)(B). However, there is no absolute right to withdraw a guilty plea, and the defendant bears the burden to establish a "fair and just reason" for withdrawal. *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003); *United States v. Grant*, 117 F.3d 788, 789 (5th Cir. 1997). There are seven factors the district court should consider when applying the "fair and just" standard:

> (1) whether the defendant asserted his innocence,
> (2) whether withdrawal would prejudice the government,
> (3) whether the defendant delayed in filing the withdrawal motion,
> (4) whether withdrawal would inconvenience the court,
> (5) whether close assistance of counsel was available,
> (6) whether the plea was knowing and voluntary, and
> (7) whether withdrawal would waste judicial resources.

*United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984). In applying these factors, courts are to consider the totality of the circumstances, and "the trial court's decision regarding a withdrawal motion must be accorded 'broad discretion.'" *Id.* at 344. "A motion to withdraw a guilty plea is committed to the discretion of the district court and its decision will not be disturbed absent an abuse of discretion." *United States v. Still*, 102 F.3d 118, 123 (5th Cir.1996). A "district court abuses its discretion if it denies a defendant's motion to withdraw a guilty plea based on an error of law or a clearly erroneous assessment of the evidence." *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014) (internal quotation marks and citations omitted).

Further, the Fifth Circuit has held that "[a]llowing [a defendant] to withdraw his plea without a fair and just reason would defeat the purpose of the plea hearing and diminish the significance of entering pleas." *United States v. Adam*, 296 F.3d 327, 332 (5th Cir. 2002), citing *Grant*, 117 F.3d at 791. In holding that a guilty plea may not be withdrawn unless the defendant provides a "fair and just reason," the Supreme Court explained that "[a]fter the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea," allowing "the defendant to withdraw his guilty plea simply on a lark . . . would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *United States v. Hyde*, 520 U.S. 670, 677 (1997).

Argument

Curry's motion should be denied. Though he claims innocence, this is the first time he has done so, it is an entirely unsupported claim, and is in direct response to the disclosure of the PSR, which recommends a guideline imprisonment range of 235-293 months. Curry pled guilty after being informed by the Magistrate Judge of his rights, potential penalties, and that he could not withdraw his plea if he discovered that his sentence would be higher than he expected. Curry admitted to the stipulated facts within the factual resume and confirmed these facts when interviewed by the Probation Officer. Further, Curry delayed filing his motion for over two months after his guilty plea. The lengthy delay weighs against granting the motion. *See Carr*, 740 F.2d at 344 (the longer the delay in filing the motion to withdraw, the more substantial the reasons must be to support the motion).

Curry cannot in good faith say that his plea was made involuntarily. He had the assistance of an attorney throughout his proceedings. The Magistrate Judge carefully admonished Curry as to the consequences of his plea and informed him of the maximum and minimum statutory penalties and the essential elements of the offense. The Magistrate Judge also admonished Curry regarding the Sentencing Guidelines, how the Guideline sentencing process worked, that the Court was not bound by the stipulated facts and may take other facts into consideration. The Magistrate Judge also warned Curry that, despite his discussion with his attorney, no one could predict with certainty the outcome of the Court's consideration of the Guidelines in his case.

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page 6**

Curry pled guilty with full knowledge of the potential consequences.    He only objects know because his potential sentence is higher than he had hoped, even though he makes a wholly unsupported claim of innocence.

(1)    *Carr* factor one: Curry asserts innocence.

Curry does assert innocence, but it is a wholly unsupported claim.    A mere claim of innocence is far from sufficient to warrant the granting of a motion to withdraw a guilty plea.    *See*, *Carr*, 740 F2d. at 344 (stating that "[f]irst, although the defendant has asserted his innocence, this claim alone is far from being sufficient to overturn denial of a withdrawal motion.    Otherwise, the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right.")    Moreover, Curry's inability to identify any specific evidence to substantiate his bare claim of innocence is a compelling reason to completely discount it, especially in light of the overwhelming evidence of his guilt.    *United States v. Estrella*, 601 Fed. Appx. 310, 311 (5th Cir. 2015).

As indicated above, Curry was first identified by law enforcement as a methamphetamine distributor in 2009.    (PSR ¶ 60.)    However, Curry was not prosecuted at that time.    Nevertheless, he again came to the attention of law enforcement in 2014.    (PSR ¶ 20.)    And in the course of both investigations, Curry gave incriminating statements to law enforcement.    (PSR ¶¶ 21-23, 26, 29, 60-61.)    And where there were gaps in Curry's statements, other co-conspirators filled in the details. (PSR ¶¶ 24-25, 30-37.)

This information resulted in the return of the indictment against him, and his eventual judicial confession to receiving ounce and multi-ounce quantities of methamphetamine on consignment from Matthew Rutledge that he (Curry) distributed to his own customers. (*See* Factual Resume.)   The Supreme Court has held that such "[s]olemn declarations in open court" are afforded a "strong presumption of verity." *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).   Moreover, on September 1, 2015, Curry was interviewed in the presence of his attorney by a U.S. Probation Officer where he admitted he was guilty of the charged offense and acknowledged the facts contained in the factual resume were true.   (PSR ¶ 45.)   Accordingly, the "maintaining innocence" factor weighs against Curry.

    (2)    <u>*Carr* factor two: Withdrawing plea would not significantly prejudice the government, but this factor is not determitive.</u>

The government would not be significantly prejudiced by allowing Curry to withdraw his guilty plea.   This finding is not determinative, because the other factors weigh overwhelmingly against Curry. *See Carr*, 740 F.2d at 345.

    (3)    <u>*Carr* Factor three: Curry delayed filing his motion.</u>

Curry's delay in moving to withdraw his guilty plea was excessive and this factor weighs against withdrawal.   Curry waited over two months from his guilty plea before he filed his motion.   This is excessive.   The Fifth Circuit has held that similar delays were excessive.   *See, e.g.*, *United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994) (6-week delay weighed significantly against defendant); *United States v. Rinard*, 956 F.2d

85, 88-89 (5th Cir. 1992) (69-day delay weighed against defendant); *Carr*, 740 F.2d at 345 (motion delayed 22 days was "not promptly filed"). "[T]he longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion." *Id.* at 344.

The delay in this case indicates that Curry did not have a "substantial reason" for changing his guilty plea, but rather that he simply changed his mind about pleading guilty. The legitimate purpose of allowing a defendant to withdraw his plea—to allow him to "undo a plea that was unknowingly made at the time it was entered"—is absent here. *See Carr*, 740 F.2d at 345. Indeed, the purpose of the rule "is *not* to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id.* (emphasis added). But that is exactly what happened in this case.

(4)  *Carr* factors four and seven: Withdrawal would inconvenience the Court and waste judicial resources.

As detailed above, the Court has already expended judicial resources on Curry's guilty plea and preparation for sentencing.

(5)  *Carr* factor five: Curry received "close assistance of counsel."

Curry claims that his attorney does not have his (Curry's) interest at heart. However, as the Court discovered in the August 31 hearing, this claim is merely the defendant's expression of his dissatisfaction with the bad news his attorney was relaying

to him. And the bad news came to fruition in the PSR, which recommended a guideline imprisonment range of 235-293 months' imprisonment. However, Curry was warned that no one, including his attorney, could predict with certainty the outcome of the Court's consideration of the Guidelines. And it is the disclosure of the PSR that is catalyst behind the defendant's bare claim of innocence.

(6)   *Carr* factor six:   Curry's plea was knowing and voluntary.

As detailed above, Curry's plea was knowing and voluntary. He had assistance of counsel, and was carefully admonished by the Magistrate Judge of the pending charge and the consequences of pleading guilty. The Magistrate Judge reviewed the factual resume with Curry at rearraignment and received assurances that before he signed it, he had read it, discussed it with his attorney, and understood what it said and what it meant. The Magistrate Judge also cautioned Curry, among other warnings, that he should not depend or rely upon any statement or promise by anyone as to the penalty that might by assessed against him. Curry assured the Court that he understood. Curry's plea was knowing and voluntary.

## Conclusion

Accordingly, the government respectfully requests that the Court deny Curry's motion to withdraw his guilty plea.

Respectfully Submitted,

JOHN R. PARKER
UNITED STATES ATTORNEY

*s/ Shawn Smith*
SHAWN SMITH
Assistant United States Attorney
Texas Bar #24033206
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile:   817-252-5455

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2015, I electronically filed the foregoing Government's Response with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.   The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means: Henry James Clark, Jr.

*s/ Shawn Smith*
SHAWN SMITH
Assistant United States Attorney